# Wright v. Commonwealth.

Nov. 8, 1939.

Charles B. Spicer and E. H. Johnson for appellant.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

C. M. Wright was indicted for a violation of Section 1213a, Kentucky Statutes, known as the "Cold Check Law." At the conclusion of the evidence for the Commonwealth, and again at the conclusion of all the evidence, the accused moved for a directed verdict of acquittal, but in each instance the motion was overruled and the case was submitted to the jury. The jury returned a verdict finding the defendant guilty as charged in the indictment and fixing his punishment at confinement in the penitentiary for a term of one year. From the judgment entered thereon, the defendant has appealed. The principal ground relied upon for a reversal of the judgment is that the trial court erred in refusing to give the jury a peremptory instruction to find the defendant not guilty.

The evidence for the Commonwealth is as follows: On August 28, 1937, the accused delivered a check for $30.50 to the Harlan Hospital, a private institution owned and operated by Dr. E. M. Howard and Dr. W. P. Cawood. The check bore this notation: "For Witherspoon 1 week hospital ward $17.50, 1 X-Ray $10, ambulance $3." Wright was the operator of a coal mine, and on several occasions had arranged with the Harlan Hospital for the hospitalization of his employees and

members of their families. The hospital authorities claimed that he failed to pay the bills rendered by the hospital, although he made certain deductions from the wages of his employees for that purpose, and that shortly before the transaction in question they began requiring him to pay in advance for services contracted to be rendered for his employees and members of their families. The Witherspoon referred to in the notation on the check was a child living in Harlan. After the check was delivered to the hospital an ambulance was sent to the Witherspoon home and the child was taken to the hospital and an X-ray picture taken. The child died two days after entering the hospital. Immediately after the delivery of the check to the hospital, Miss Ruth Brock, the bookkeeper, took it to the bank on which it was drawn, which was located about one block from the hospital, and presented it for payment, which was refused because Wright did not have sufficient funds on deposit to his credit to meet it. The records of the bank showed that he had on deposit $17.11 when the check was presented. Miss Brock returned to the hospital with the check and delivered it to Dr. Howard. A warrant for the arrest of Wright was procured within two hours after the delivery of the check. This warrant was never executed, and he was not arrested until after an indictment had been returned by the grand jury.

Forest Bryant, an employee of the bank, was introduced as a witness for the Commonwealth and testified that Miss Brock presented the $30.50 check for payment on Saturday morning, August 28, 1937, and that payment was refused because Wright had on deposit at that time only $17.11. Before 11 o'clock on the same morning a deposit of $1,500 was made by Wright. Later in the day Wright's bookkeeper, Miss Anna V. Jennings, withdrew $1,448 for the pay roll and two $25 checks were charged to the account. A check for $20 was deposited in Wright's account after 11 o'clock A. M. on Saturday or on Monday, August 30, 1937, and at the close of business on Monday he had a balance in the bank of $38.71. The records of the bank showed that Wright deposited $220 on August 16, $220.80 on August 24, $1,500 on August 28, $20 on August 30, $100 on September 6, and that except for a short time on August 28 and a few hours on August 30 he had sufficient money on deposit in the bank to meet the $30.50 check at all times from its execution up to and including September

10, 1937. Wright testified that he went to the hospital on Friday morning, August 27, and arranged for the hospitalization of the Witherspoon child. He gave the hospital a check for $17.50, and returned to the mine. On the following morning Miss Brock called him and said there would be an additional charge of $10 for an X-ray and $3 for an ambulance. He immediately went to Harlan, took up the $17.50 check, and wrote the check for $30.50. Before leaving the mine he asked his book-keeper if he had sufficient money in the bank to meet the check and was informed that he had. At the time he gave Miss Brock the check for $30.50 he had in his pocket a check for $1,500, which he took to the bank and deposited within ten minutes after giving the $30.50 check to Miss Brock. Later in the day an employee of the bank notified Miss Brock by telephone that Wright then had on deposit sufficient funds to meet the $30.50 check, and Miss Brock did present the check later in the day, but, in the meantime, Wright's bookkeeper had withdrawn $1,448 for the pay roll and the bank had charged two $25 checks to Wright's account, and again there was less than $30.50 in his account. Learning of this, Miss Jennings went to the hospital and tendered $30.50 and offered to take up the check, but, in the meantime, Dr. Howard had taken the check away from the hospital. C. S. Bryant, an employee of the bank and brother of Forest Bryant, testified that when Miss Jennings got the pay roll she purposely left enough in the bank to take care of the $30.50 check, but that later in the day the bank received a letter from the Federal Reserve Bank containing a $25 check which was charged to Wright's account. Miss Jennings was notified, and returned to the bank and deposited $20 to take care of the check. At Wright's suggestion he made a notation on the margin of the bank's record containing Wright's account to "hold" to meet the check which had been given to the hospital. Bryant testified that after the $1,500 deposit was made he called the hospital and neither Miss Brock nor Dr. Howard were there, and he then called Dr. Howard at his office and told him the check was good. Dr. Howard told him he did not want the money on the check, but he wanted Wright.

In prosecutions under Section 1213a of the Statutes, the burden is on the Commonwealth to show intention to defraud on the part of the drawer of the check and that he knew he had not sufficient funds in the bank for

the payment of the check. Commonwealth v. Gentry, 261 Ky. 564, 88 S. W. (2d) 273; Hughes v. Commonwealth, 230 Ky. 37, 18 S. W. (2d) 880; Burnam v. Commonwealth, 228 Ky. 410, 15 S. W. (2d) 256. The statute provides that the making, drawing, uttering, or delivering of a check by a person knowing that he has not sufficient funds in the bank for its payment shall be strong prima facie evidence that he intended to defraud, but the presumption of guilt, if any, raised by the evidence for the Commonwealth in the present case was completely destroyed by the evidence for the defendant, all of which was undenied. The proof shows not only that appellant had no intention to defraud when he delivered the check to the hospital, but that he employed every means reasonably necessary to provide for the payment of the check when he was informed of the condition of his account at the bank. We have seldom seen a graver miscarriage of justice. It follows from what has been said that the trial court erred in overruling appellant's motion for a directed verdict of acquittal. The Attorney General, with commendable frankness, concedes that the judgment should be reversed.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.